IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WHEELING DIVISION

| | |
|---|---|
| ANGEL MOORMAN | § |
|     PLAINTIFF | § |
| | § |
| V. | § |
| | § |
| UNITED STATES OF AMERICA | § |
|     RESPONDENT | § |

CAUSE NO. 5:24-cv-192

**FILED** Bailey

OCT - 2 2024 Mazzone

**U.S. DISTRICT COURT- WVND
WHEELING, WV 26003** Prince

## COMPLAINT FOR DAMAGES UNDER FEDERAL TORT CLAIMS ACT

[28 U.S.C. § 1346]

COMES NOW, Angel Moorman, Plaintiff, pro se, to bring this suit for damages in the sum certain of $25,000,000.00. Such damages are compensatory for my personal physical and emotional injury, pain, and suffering caused by tortious conduct for which Respondent is liable. This suit is brought pursuant to the Federal Tort Claims Act ("FTCA").

PARTIES

1. I am an inmate in the custody of the Federal Bureau of Prisons ("BOP"). I am presently incarcerated at FCI Bastrop in Bastrop, Texas. When the events underlying this complaint occurred, I was incarcerated at FCI Hazelton in Bruceton Mills, West Virginia.

2.    Respondent United States of America is hereby sued for negligence, assault, battery, and outrage committed by law enforcement officers of the BOP during the discharge of their duties.

JURISDICTION

3.    This Court has jurisdiction over the claim asserted against Respondent on the ground that the claim is asserted under the FTCA, and this Court has subject matter jurisdiction over such claims pursuant to 28 U.S.C. § 1346(b). It is axiomatic that the United States may not be sued without its consent, and that such consent is a prerequisite to jurisdiction. United States v. Mitchell, 463 U.S. 206, 212 (1983). The FTCA makes the United States liable for tort claims in the same manner and to the same extent as a private individual under like circumstances. Sexton v. United States, 2023 U.S. Dist. LEXIS 56557 (S.D.W.Va. 03/31/2023), citing 28 U.S.C. § 2674.

EXHAUSTION

4.    I submitted this claim to the BOP on Standard Form 95 for the sum certain described above and detailing the claims alleged herein. Such claim was received on September 15, 2023 and assigned Administrative Claim Number TRT-MXR-2024-04851. On May 07, 2024 the BOP Mid-Atlantic Regional Office Regional Counsel denied my claim and directed me to file suit with the appropriate U.S. District Court to seek redress.

5.    This exhaustion of administrative avenues for relief is cumulative to the BOP Administrative Remedy Process which I initiated on April 22, 2019 and which culminated in a civil rights action concerning the same underlying claims. That Bivens action, Moorman v. Wadlow, 2023 U.S. Dist. LEXIS 84230, was finally denied by this Court due to the Supreme Court's intervening restriction of Bivens suits in Egbert v. Boule, 142 S. Ct. 1793 (2022).

6. This claim was previously rejected by this Court for failure to exhaust administrative remedies. At this point, there are no further administrative avenues for relief and judicial redress of Respondent's tortious conduct is necessary and proper.

TIMELINESS

7.    The Mid-Atlantic Regional Counsel alleged in his denial of my claim that my submission of the claim was time barred. While the incidents underlying this claim occurred on December 29, 2018 and that date is more than two years from the present, Respondent has been on notice of my claim since April 22, 2019. I have doggedly pursued this claim, based on the same underlying facts and for the same sum of damages, since that date and Respondent has been aware of this as evidenced by the Administrative Remedy Process and the defunct Bivens action.

8.    In order to proceed on a tort claim against the United States, the claim must be presented in writing to the appropriate Federal agency within two years after such claim accrues, and action must be commenced within six months after the claim is denied by the agency. 28 U.S.C. § 2401(b). However, the

time bars of the FTCA are not jurisdictional and are subject to equitable tolling. United States v. Kwai Fun Wong, 575 U.S. 402, 420 (2015). A litigant is entitled to equitable tolling if that litigant establishes that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented timely filing. Menominee Indian Tribe of Wis. v. United States, 577 U.S. 250, 255 (2016).

9.    In this case, I diligently pursued my claim through three levels of agency administrative remedies, two district rulings, and one appellate ruling. The extraordinary circumstance I faced was the drastic closure of a plaintiff's ability to redress violations of his civil rights at the hands of the federal government in Egbert, supra. See also Dyer v. Smith, 56 F. 4th 271 (4th Cir. 12/29/2022)("The recent Supreme Court case of Egbert v. Boule all but closed the door on Bivens remedies). This foreclosure of redress leaves the FTCA, formerly a complementary remedy to the Bivens action, as the sole means of remedy for wrongs done by law enforcement officers of the federal government to inmates in their custody. Not only did this change occur between the accrual of my claim and the filing of this petition, but within that timeframe I was forced by Respondent to spend five months in administrative segregation which severely curtailed my ability to pursue this action. As a layman diligently pursuing a grave claim, pro se, through a shifting legal landscape, and all the while subject to the total control of the Respondent in the action, I humbly request that the limitations periods related to this claim be tolled in equity to avoid gross injustice.

FACTUAL BASIS

FACTUAL BASIS

10.    On the morning of December 29, 2018 officer C. Wadlow approached me and said, "I'll be back to get your nigger ass." Later that morning, Officer Zaccone approached me and said, "You know what's about to happen, right?" Several officers then deployed pepper spray into my cell. Following this, they aimed pepperball guns at me and began to fire upon me. I was shot in the face, torso, arms, and legs approximately fourteen times. Then, officers entered my cell and began to beat me. After I collapsed to the floor, they kicked me in the head and back. After pummelling my prone body, the officers placed me on a gurney and struck me repeatedly in the face and head with the door to my cell.

INJURIES

11.    As a result of the events described above, I suffered contusions, lacerations, a fractured jaw, respiratory distress, and cardiac arrest. I stopped breathing and required emergency ventilation. My heart stopped beating and I had to be resuscitated. I was placed at death's door by the actions of the officers. In addition to the visible and invisible physical injuries I suffered from Respondent's actions and the pain and suffering that comes with them, I have also experienced emotional trauma resulting from this nightmarish incident. I have suffered extreme emotional distress, nightmares, anxiety, depression, and post traumatic stress disorder.

CLAIMS

12.   The actions of officers set forth in the preceding paragraph constitute the torts of negligence, assault, battery, and outrage in violation of West Virginia personal injury law. A prisoner can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee. United States v. Muniz, 374 U.S. 150, 150 (1963). Although intentional torts are generally excluded from the waiver of sovereign immunity afforded by the FTCA, under its law enforcement proviso claims arising out of certain intentional torts may be brought in regard to the acts of investigative or law enforcement officers. Sierra v. United States, 2023 U.S. Dist. LEXIS 59881 at *6 (N.D.W.Va. Mar 14, 2023).

13.   In this context, "law enforcement officer" means any officer of the United States who is empowered to execute searches, seizures, or to make arrests for violations of federal law. Id, citing 28 U.S.C. § 2680(h). The officers of the BOP satisfy this definition. Further, the tortious conduct of the officers occurred during their hours of employment, at the location of their work for the BOP, and the task they were engaged in (i.e., extracting a prisoner from his cell) is a duty fairly and naturally incident to the scope of their employment. See, e.g., BOP Policy Statement PS 5566.06, which controls an officer's use of force in physically controlling a prisoner. See also, Ali v. Fed. Bureau of Prisons, 552 U.S. 214 (2008). While the scope of work of a BOP law enforcement officer does not explicitly permit such things as unlawful assault and battery, such "conduct can be within the scope of employment in West Virginia even if done mistakenly or ill-advisedly". See

Sierra, supra at *12: "Officer Wadlow's actions, even if mistaken or ill-advised, may have been at least in part due to a desire to ensure institutional security." Thus, Respondent is liable for the negligent and intentional tortious conduct of the law enforcement officers as described herein and is not immune from this suit for damages.

14.    Respondent is liable for negligence committed by the officers. Pursuant to BOP Policy Statements PS 5566.06 and PS 5576.06 officers deploying chemical agents, including pepper spray, have certain duties concerning staff and inmate safety and restricting the use of force. Such restrictions include: "staff shall use only that amount of force necessary to gain control of the inmate" [PS 5566.06(6)(c)]; "qualified health personnel... shall be consulted prior to staff using chemical agents unless the circumstances require an immediate response. Ordinarily, in a calculated use of force situation, the inmate's medical file must be reviewed by these personnel to determine whether the inmate has any diseases or conditions which would be dangerously affected if chemical agents or non-lethal weapons are used. This includes, but is not limited to, asthma, emphysema, bronchitis,..." [5566.06(11)(b)]; "Staff must obtain a video camera immediately and record any use of force incident, unless it is determined that a delay in resolving the situation would endanger others..." and "When a threat...requires an immediate response, staff are obligated to obtain a camera and begin recording the event as soon as feasible" [5566.06(14)(c)]; "The BOP authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed" [5576.06(4)]. The officers breached these duties by failing to gather and take into account information regarding my respiratory illness, failing to record the use of force, failing to limit the use of force to only

that amount necessary, and to attempt other reasonable efforts to resolve the situation. In breaching these duties the officers harmed me, injuring me to the brink of death, traumatized me, and left me with physical and psychological damage.

16.   Respondent is liable for assault and battery committed by the officers. By racially taunting and verbally abusing me, and aiming pepperball guns and pepper sprayers at me, the officers acted with intent to cause harmful contact with me and with the intent to create an immediate apprehension of such harmful contact with me. I was thereby put in such immediate apprehension. Further, when the officers deployed chemical agents in the form of pepperballs and pepper spray, whenthe officers beat me until I collapsed, when the officers kicked me while I lay prone on the floor, and when the officers slammed my head with the cell door while I was confined to a gurney the again acted to cause harmful or offensive contact with me and such harmful contact was consummated, as evidenced by my grievous and temporarily fatal injuries.

17.   While law enforcement officers may be privileged to use force in the normal course of their employment (e.g., while removing a prisoner from a cell) that privilege is not absolute. Weigle v. Pifer, 139 F. Supp 3d 760, 776-77 (S.D.W.Va. Oct. 14, 2015). Force that would otherwise constitute a battery is not privileged if that force is excessive. Id. The appropriate amount of force is defined by BOP policy and should be limited to only that amount required and no more. BOP PS 5566.06. The force applied to me by officers as described herein was far in excess of the amount required, especially once I collapsed to the flore, and moreso once I was confined to a gurney.

18.    Respondent is liable for the intentional tort of outrage, i.e., the intentional or reckless infliction of emotional distress. See, e.g., Parrish v. United States, 2019 U.S. Dist. LEXIS 229484 at *36, quoting the tort elements as described by the West Virginia Supreme Court in Travis v. Alcon Laboratories, Inc., 202 W. Va. 369, 504 (W.Va. 1998). By striking my head with the cell door after confining me to a gurney, the officers engaged in conduct which was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency. This behavior is so obviously abhorrent that the officers clearly acted with the intent to inflict emotional distress, or they acted recklessly when it was certain or substantially certain that emotional distress would result from such conduct. The officers' actions caused me to suffer emotional distress including post-traumatic stress disorder, which I still suffer from. Finally, the distress was so severe that no reasonable person could be expected to endure it. The FTCA prohibits prisoners from suing for emotional injury, except where physical injury can also be shown. 28 U.S.C. § 1346(b)(2). I can satisfy this requirement and Respondent is liable for the emotional and psychological harm I suffered due to the officers' actions.

PRAYER

19.   On the claims set forth herein, I ask the Court to enter judgment against Respondent, United States of America. I ask the Court to hold Respondent liable for damages to me in the amount of $25,000,000.00.


Respectfully Submitted,



9-24-24

Angel Moorman                                    Date

Plaintiff, pro se

Fed. Reg. No. 74306-067

Federal Correctional Institution

PO Box 1010

Bastrop, TX 78602-1010